Smith, Officer of Bob, Inc., Appellant, *v.* Limbach, Tax Commr., Appellee.

[Cite as *Smith v. Limbach* (1992), 64 Ohio St.3d 473.]

(No. 91–1897—Submitted April 23, 1992—Decided September 2, 1992.)

*Carroll E. Hunt,* for appellant.

*Lee I. Fisher,* Attorney General, and *Janyce C. Katz,* for appellee.

*Per Curiam.* The BTA decided, essentially on the basis that Smith was the president and sole officer of Bob, Inc., that he was a responsible officer under the statute and liable for payment of the unpaid sales taxes. We hold that the decision of the BTA was unreasonable and reverse it.

Being an officer of a corporation does not, in and of itself, impose liability on an individual. *Weiss v. Porterfield* (1971), 27 Ohio St.2d 117, 56 O.O.2d 65, 271 N.E.2d 792; *Kihm v. Lindley* (1982), 70 Ohio St.2d 76, 24 O.O.3d 149, 434 N.E.2d 1354.

The BTA placed heavy reliance upon *Spithogianis v. Limbach* (1990), 53 Ohio St.3d 55, 559 N.E.2d 449, and *McGlothin v. Limbach* (1991), 57 Ohio St.3d 72, 565 N.E.2d 1276. We find, however, that *Hile v. Limbach* (1989), 44 Ohio St.3d 197, 542 N.E.2d 651, and *Kihm* control.

In *Hile,* the appellant, Darwin Hile, was the president of the taxpayer corporation, and was also the owner and president of a general contracting company. For the taxpayer corporation he presided at monthly board meetings, but he received no salary. He was not involved in daily operations. He

had authority to sign checks, but never signed sales tax checks or returns. Those functions were performed by the general manager or the comptroller. The BTA held Hile liable for unpaid sales tax assessments against the corporation because he retained the right to countersign checks and "not only had the power to pay the corporation's sales taxes but also had the power to control and supervise the persons charged with the responsibility of paying these taxes." *Id.* at 198, 542 N.E.2d at 652. In *Hile*, we reversed the BTA's decision and cited *Weiss, supra,* holding that " * * * an officer who is in no way connected with the preparation or filing and payment of Ohio sales taxes is not liable [therefor]." *Hile* at 199, 542 N.E.2d at 653.

In *Kihm*, the appellees, Joseph H. Kihm and William Ridmann, were the presidents of separate contracting firms which did remodeling work for the taxpayer company, Central Oyster House Inc., a restaurant. The restaurant defaulted in payment of outstanding obligations, including charges for the work done by appellees' contracting firms. Appellees acquired the stock of Central Oyster House to continue the operation of the restaurant in order to obtain payment owed to their firms. Appellees Kihm and Ridmann became president and treasurer, respectively, of Central Oyster House, and a general manager, an accountant, and a bookkeeper were hired to operate the restaurant. Neither appellee participated in management or operation of the restaurant. They received no salary, dividends or benefits. The Tax Commissioner argued that "liability [for unremitted sales taxes] attaches [to appellees] under R.C. 5739.33 simply because a person is a corporate officer or director and, thus, ultimately has the power to supervise corporate employees." *Kihm* at 77, 24 O.O.3d at 150, 434 N.E.2d at 1355. However, we rejected that argument, as did the BTA, stating that the record was devoid of any evidence that appellees were directly responsible for the preparation or filing of returns or the making of payments.

The record in the present case indicates that on May 9, 1984, at the request of Rowena Group, who was then entitled to receive all the stock of Bob, Inc., Smith agreed to accept the title of president of Bob, Inc. He accepted as a favor to the family of his deceased friend in order to take care of Robert Group's unfinished financial transactions. Apparently, even before he became president, Smith had arranged for the sale of some equipment from one of the restaurants owned by Bob, Inc. He deposited the proceeds of that sale into his real estate trust account and paid back bills, including delinquent sales taxes. The two remaining restaurants were operated by other individuals: Casa Pasta by Chef de Marchi, and Mr. Gatti's Pizza by Rowena Group and Janet Tomas.

The record also discloses that Ken Bailey, an employee of Fred B. Smith & Associates, had been given limited check-writing authority by Robert Group, during his lifetime. Bailey possessed authority to prepare payroll reports and issue payroll checks. It is significant that Bailey's authority had come from Robert Group and not from Smith. In addition, Bailey may have signed sales tax returns on behalf of Bob, Inc., at the request of a sales tax examiner. There is no indication that Smith knew of, or authorized, the signing or preparation of sales tax returns or the payment of sales taxes during the audit period.

From our review of the record we conclude there is no significant probative evidence that Smith, as president of Bob, Inc., was directly responsible for filing returns or making payments of sales taxes. The bare title of president of Bob, Inc. did not make Smith personally liable under the statute for unpaid sales taxes. Furthermore, Smith could not have been responsible under the BTA's theory for the tax periods of October and December 1985, because he had been removed as president on August 28, 1985.

The decision of the BTA is unreasonable and it is reversed.

*Decision reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.